**OMAHA TRIBE OF NEBRASKA,
Appellant,**

v.

**Harold A. SWANSON, Jr; United States Department of Interior; James Watt, Secretary; Kenneth Smith, Asst. Secretary of Indian Affairs; Kenneth Payton, Acting Commissioner of Indian Affairs; Jerry Jaeger, Area Director-Aberdeen Office, Bureau of Indian Affairs, Appellees.**

**OMAHA TRIBE OF NEBRASKA,
Appellant,**

v.

**Harold A. SWANSON, Jr; United States Department of Interior; James Watt, Secretary; Kenneth Smith, Asst. Secretary of Indian Affairs; Jerry Jaeger, Area Director-Aberdeen Office, Bureau of Indian Affairs, Appellees.**

No. 83–1812.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1984.

Decided June 8, 1984.

Roth, Van Amberg, Gross, Amarant & Rogers, Santa Fe, N.M., for appellant Omaha Tribe of Nebraska.

F. Henry Habicht, Acting Asst. Atty. Gen., Washington, D.C., Evan L. Hultman, U.S. Atty., Cedar Rapids, Iowa, Asher E. Schroeder, Asst. U.S. Atty., Sioux City, Iowa, Anne S. Almy, Claire L. McGuire, Attys., Dept. of Justice, Washington, D.C., for appellees.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

The Omaha Tribe of Nebraska appeals from a denial of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. For reversal, the tribe argues that it is a prevailing party under the EAJA and that the government's position is not substantially justified. We reject the tribe's argument that it is a prevailing party and affirm the district court.

In 1975, the United States, acting as trustee for the Omaha Tribe, brought an action to quiet title to certain lands, consisting of almost three thousand acres, alleged to be within the Omaha Indian Reservation. The lands had for many years been occupied and farmed by non-Indians, and have been the subject of many court decisions. *See, e.g., Omaha Indian Tribe v. Wilson,* 614 F.2d 1153 (8th Cir.), *cert. denied,* 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980); *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979); *United States v. Wilson,* 433 F.Supp. 67 (N.D.Iowa 1977). By court order of June 5, 1975, the lands were deemed to be in possession of the Omaha Tribe pending the results of the litigation to quiet title. The tribe then entered into several agreements to lease the lands to Harold A. Swanson, Jr. The leases included crop-share arrangements, mandatory accounting provisions, and various other requirements. The Bureau of Indian Affairs (BIA) was not actively involved in negotiating or supervising the leases, although it did sign the leases as trustee. In 1980, title to the lands involved in this case was quieted in the United States as trustee on behalf of the tribe. *See Omaha Indian Tribe v. Wilson, supra,* 614 F.2d at 1153.

Assured of proper title, the BIA initiated an investigation into Swanson's alleged noncompliance with the lease conditions. As a result of its investigation as well as new tribal concern about possible lease violations by Swanson, the BIA issued Swanson a lease cancellation letter in accordance with 25 C.F.R. § 162.14. The lease cancellation was reversed, however, for insufficient evidence after an appeal by Swanson under 25 C.F.R. § 2. The BIA continued its investigation by seeking information from Swanson, local grain elevators, the federal court, and attorneys for Swanson and the tribe. The BIA initiated an independent audit of Swanson's operations and

prepared regular crop reports concerning Swanson. On the basis of this investigation, the BIA sent Swanson a second cancellation letter, five months after the acting area director had reversed the first lease cancellation.

The leases were subsequently cancelled after a hearing. Swanson was notified of his appeal rights and was required to post bonds in excess of $250,000 to remain on the leased lands pending an appeal. Swanson appealed, but failed to post the bonds, prompting the superintendent to serve upon Swanson a notice to quit. However, because exhaustion of appeal procedures was estimated to take substantial time and the BIA did not believe there was authority to remove Swanson forcibly, it advised the tribe that independent legal action was necessary to remove Swanson expeditiously from the leased lands if the tribe had evidence of fraud by Swanson in connection with the leases. Acting on this advice, the tribe obtained a temporary restraining order preventing Swanson from disposing of the crops grown on the leased lands. The tribe also brought two actions in federal district court against Swanson seeking an accounting and the immediate removal of Swanson from the leased lands and against the government and certain government officials for breach of fiduciary duty in failing to take appropriate action against Swanson.

After consolidation of the actions, a settlement was reached by the parties concerning the dispute between Swanson and the tribe. In the settlement decree, Swanson acknowledged the tribe's right to immediate possession of the leaseholds and abandoned his administrative appeal. Swanson also agreed to transfer certain stored crops and $70,000 to the tribe in satisfaction of earlier accrued rents. In exchange, the tribe granted Swanson a limited license to harvest the remaining crops and agreed to lease other lands to Swanson on a cash-rent basis. Finally, the parties agreed not to pursue further legal actions against one another for claims arising from the leases, although the tribe did not release any claims it might have had against the United States. The district court approved the settlement agreement. Relying on the favorable settlement, the tribe applied for fees and expenses under the EAJA. The district court denied the tribe's application and the tribe appeals from that decision.

The Equal Access to Justice Act authorizes attorneys fees and expenses in litigation against the government under certain circumstances. 28 U.S.C. § 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

 To qualify for fees, a party must first demonstrate that it has prevailed in its lawsuit as against the United States. Congress intended that interpretation of the term prevailing party under the EAJA be consistent with interpretations that have developed under existing fee-shifting statutes. *See* H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4990. *See also Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid,* 717 F.2d 964, 966 n. 2 (6th Cir.1983). To determine if a party has prevailed, a court may look to the substance of the litigation's outcome. *Reel v. Arkansas Board of Correction,* 672 F.2d 693, 697 (8th Cir.1982) (42 U.S.C. § 1988). A party need not succeed on all the issues to be considered prevailing. *United States for Heydt v. Citizen's State Bank,* 668 F.2d 444, 447 (8th Cir. 1982). Neither must the litigation proceed to trial; a party may be considered prevailing if a favorable settlement is obtained. *Id.* It is enough if a party succeeds on any

significant issue which achieves some of the benefit the party sought in bringing the suit. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (42 U.S.C. § 1988). To determine whether a party has prevailed "the important thing is what relief was awarded on the facts and the law, not what relief was expressly requested by the pleadings." *Fast v. School District of City of Ladue,* 728 F.2d 1030, 1033 (8th Cir.1984).

■ After reviewing the pleadings, it appears that the tribe sought to achieve two objectives through its lawsuits. First, the tribe sought a resolution of the dispute with Swanson concerning the lease violations. Second, the tribe sought to show that the United States had breached its fiduciary duty to the tribe with respect to the leaseholds. We believe that the settlement reached only the first of these two issues—the lease violations by Swanson. Thus, we cannot conclude that the tribe was a prevailing party in its claim against the United States for breach of fiduciary duty.

With regard to the claim against Swanson, the tribe and the government were not in adversarial roles. The government's goal was identical to that of the tribe; they both wanted to remove Swanson from the lands and to restore to the tribe any wrongfully converted crops or funds. The government consistently had sought Swanson's compliance; indeed, it had initiated a comprehensive investigation into Swanson's affairs, and twice had proceeded administratively to cancel Swanson's leases.

We note that in *Citizens Coalition For Block Grant Compliance, Inc. v. City of Euclid,* 537 F.Supp. 422 (N.D.Ohio 1982), *aff'd,* 717 F.2d 964 (6th Cir.1983), the court faced a similar situation: the parties, though nominally adverse, were not adversaries in fact. In that case, a citizens group brought suit against the City of Euclid and the Department of Housing and Urban Development seeking to bring the city into compliance with federal fair housing standards. HUD was named as a defendant "to bring pressure to bear on HUD in order that it would bring pressure to

bear on Euclid." *Id.* at 425. After the suit was filed, the parties entered into a settlement agreement stating that the city was in compliance with the applicable fair housing laws. Both HUD and the city agreed in the settlement to make certain information available to the citizens group on a periodic basis so the group could continue to monitor the city's compliance with federal fair housing standards. The district court denied the citizens group's application for attorneys' fees under the EAJA, stating that the citizens group was not a prevailing party as against HUD:

> [I]t is clear that HUD sought Euclid's compliance all along, although no doubt not as aggressively as the plaintiffs desired. Nonetheless, it is evident that HUD's goal and the plaintiffs' goal were the same....
>
> In sum, considering that nothing in the settlement agreement indicates that the plaintiffs have obtained any of the relief they sought from HUD ... the Court concludes that plaintiffs are not a prevailing party against HUD.

*Id.* at 425. The Sixth Circuit then quoted this determination with approval. *See Citizens Coalition For Block Grant Compliance, Inc. v. City of Euclid, supra,* 717 F.2d at 967. We reach the same conclusion in this case. With regard to the claim against Swanson, the tribe and the United States were not adversaries, and thus the tribe could not have been a prevailing party.

In contrast to the claim against Swanson, the claim against the government for breach of fiduciary duty did cast the tribe and the government in adversarial roles. In its complaints the tribe alleged that the government had either failed, neglected, or refused to protect the tribe's interest in the leaseholds.

The settlement agreement focuses exclusively on achieving the tribe's objectives with respect to Swanson; there is nothing in the settlement agreement which indicates that the tribe obtained any of the relief it sought from the United States. The settlement agreement states that the parties "have agreed to a settlement of said action in respect of all claims against

defendant Swanson without further adjudication." In contrast, the tribe's claim against the government was reserved: "Nothing in this agreement or in the consent decree * * * shall be considered a release of any claims against the United States or its officials by plaintiff Tribe." The tribe has as much as admitted that it settled only the claim against Swanson. A resolution attached to the settlement agreement states that "the Omaha Tribal Council has agreed to settle pending legal actions by the Tribe *against Harold A. Swanson, Jr.*" (Emphasis added.) In addition, the government consented to continued jurisdiction of the district court for all purposes. Indeed, the tribe in its brief has stated that "the government consented in the stipulation *to remain liable* to the Tribe for damages, if any, resulting in the compromise with Swanson made necessary by his financial condition." (Emphasis added.) This reservation of rights by the tribe persuasively indicates that the fiduciary duty issue has not been resolved.

The primary provisions of the settlement were Swanson's recognition of the tribe's right immediately to possess the land, Swanson's abandonment of his administrative appeal, and Swanson's agreement to transfer crops and money to the tribe in satisfaction of accrued rents. The government's participation in the settlement agreement was designed to achieve its joint objectives with the tribe as against Swanson. The government did agree not to sue Swanson on the basis of rights or liabilities accruing from these events. As the district court correctly observed, however, "this was no real concession in that any duty owed by Swanson to the government was concurrent with or derivative of Swanson's duties to the Tribe, the latter which were fully settled ...." The government also waived its normal lease procedures to permit greater tribal participation in lease supervision. These nominal concessions, however, do not warrant the conclusion that the tribe prevailed over the government with respect to its fiduciary duty claim.

Essentially, the tribe's argument that it has prevailed against the United States is hinged upon its prediction that it "would have been entitled to a declaratory judgment that the BIA had breached its trust duties." Brief for Omaha Tribe of Nebraska at 28. Under the EAJA, it is necessary for a party actually to prevail against the United States; it is not enough that a party predict that it would have won if the case had proceeded to judgment on the merits. The term "prevailing party" does not include those who believe they "would have" prevailed against the United States, but did not. In the absence of a settlement of the issue or a trial on the merits, the tribe cannot realize upon its optimistic prediction of victory in its controversy with the government. Accordingly, the tribe's contention that it prevailed over the government as to this issue must fail.

Because we hold that the tribe was not a prevailing party as against the government, it is unnecessary to reach the issue of whether the government's position was substantially justified. The judgment of the district court is affirmed.

Affirmed.