ESTATE OF Thomas L. KAPLIN, deceased, Maury I. Kaplin, Executor, and Gertrude F. Kaplin, surviving spouse, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 82–1842.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1983.

Decided Nov. 26, 1984.

Gerald P. Moran (argued), Gressley, Kaplin & Parker, John G. Mattimoe, Toledo, Ohio, for petitioners-appellants.

Kenneth W. Gideon, Chief Counsel, I.R.S., Glenn L. Archer, Michael L. Paup, David English Carmack, John P. Griffin (argued), Tax Div. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before MERRITT and MARTIN, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The petitioners appeal a decision of the Tax Court upholding a deficiency in their taxes of $379,255 in 1975 and $3,115 in 1976. The Tax Court's decision is reported as *Estate of Kaplin v. Commissioner,* Tax Ct.Mem.Dec. (P–H) ¶ 82,440 (1982). The petitioners assert in this appeal that: (1) the Tax Court's findings are clearly erroneous; (2) the Tax Court applied the wrong legal standard in valuing certain property; and (3) the Tax Court should have reopened the record to allow the introduction of evidence of the subsequent sale of the property.

The alleged tax deficiency in this case is the result of a charitable deduction taken by the petitioners when they donated the Plaza Properties to the City of Toledo in 1975. The Plaza Properties consisted of land and six improvements located in the Old West End of Toledo. Gertrude Kaplin, in a joint return with the estate of her deceased husband, claimed a charitable deduction of $561,917 in 1975 and a carryover deduction on her individual return of $14,-262 in 1976. The Commissioner determined in 1979 that the fair market value of the properties was only $22,000 and disallowed all deductions in excess of that amount.

On a petition for redetermination, the Tax Court upheld the deficiencies as determined by the Commissioner. The Tax Court relied solely on two sources in making its determination. First, the court found the government expert's valuation report to be very persuasive and adopted his findings exactly. Second, the court found highly relevant an information statement prepared by the petitioners for former stockholders in the Plaza Properties which stated that major renovation was required to make the properties profitable. The Tax Court found flaws in all the other evidence presented to it and refused to consider it.

In reviewing the Tax Court's factual findings as to fair market value, we may only set them aside if they are clearly erroneous. *Miami Valley Broadcasting Corp. v. Commissioner,* 594 F.2d 556, 557 (6th Cir.1979). "While that standard of review requires that we accord great deference to the values established by the Tax Court ..., it does not render us a mere rubber stamp." *Id.* Because we believe that the Tax Court's findings are clearly

erroneous as to fair market value, we now reverse.

We find at least two major errors in the Tax Court's determination. First, it was clear error for the Tax Court not to take into account the sale of the properties by the City of Toledo to Klingbeil Management Company, a developer, approximately two years after the donation of the property. In this sale of the property, Klingbeil gave the city: (1) $25,000 in cash; (2) a commitment to fully renovate the properties at a cost of $1.9 million; (3) a letter of credit for $150,000 guaranteeing the conditions of the contract; and (4) a contract provision prohibiting Klingbeil from selling the property without the city's approval.

In determining the fair market value of property, little evidence could be more probative than the direct sale of the property in question. In fact, fair market value is defined as "the price at which the property would change hands between a willing buyer and willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Treas.Reg. § 1.170A–1(c)(2). Thus, this sale of the property in question for consideration of at least $175,000 is highly relevant and should have been considered by the Tax Court.

There are two possible reasons that the Tax Court did not consider this sale. First, because the sale occurred over two years after the donation, the Tax Court may have felt that the property had changed. The record demonstrates, however, that the City of Toledo did not improve the property during this period but only watched over it. If anything, the property would have decreased in value during this period because little attention was given to it. Second, the Tax Court may not have considered the sale because of evidence in the record that the City of Toledo did not intend to sell the property for fair market value but only tried to recoup its holding costs. This evidence, however, would suggest that the fair market value is actually greater than the sales price and is not a justification to ignore the sale. It was therefore clearly

erroneous for the Tax Court not to consider this sale.

The Tax Court's second major error was not to consider the tax-assessed value of the property of $864,300. This tax-assessed value was determined only three months after the donation of the property, and under Ohio law, tax-assessed value, as the Tax Court recognized, is intended to represent fair market value. The Commissioner has even used tax-assessed value as evidence of fair market value. *Estate of Frieders v. Commissioner*, 687 F.2d 224, 227 (7th Cir.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983). Evidence of tax-assessed value is therefore relevant to the determination of fair market value in this case and should not have been ignored.

The Tax Court refused to consider the evidence of tax-assessed value because that value was allegedly based on the cost replacement method of determining value. The Tax Court found that in this case, which involved aged and deteriorated buildings, the cost replacement method was an unreliable test for value. Although in certain instances the cost replacement method may not be the best method of ascertaining fair market value, *see Ujvari v. United States*, 212 F.Supp. 223 (S.D.N.Y.1963), it is a traditionally accepted valuation method and should not be totally ignored by the Tax Court without strong justification. In this case, where the possible rental income from the building was hotly contested, the Tax Court should have considered cost replacement value.

Due to these two errors, we hold the Tax Court's finding as to value to be clearly erroneous, and we remand the case to the Tax Court for reconsideration. Because the petitioners raise other claims that will have bearing on the Tax Court's reconsideration, we must also evaluate those claims.

First, the petitioners claim that the Tax Court applied the wrong legal standard in deciding the case. Petitioners assert that instead of applying the requisite fair market value standard, the Tax Court sanc-

tioned the petitioner's for not settling the case by adopting the lowest valuation presented by the government. Petitioners argue that the Tax Court stated that it would adopt such a sanction in *Buffalo Tool & Die Manufacturing Co. v. Commissioner*, 74 T.C. 441 (1980), and that in this case, the Tax Court, without citing *Buffalo Tool*, was applying that decision.

■ Although one can certainly debate whether *Buffalo Tool* stands for the proposition that the petitioners claim, it is clear that the Tax Court cannot sanction a taxpayer for seeking a judicial determination of her case. Such a holding would directly contradict fair market value standards and our conceptions of justice. There is no evidence, however, in this case that the Tax Court applied the *Buffalo Tool* sanction. The Tax Court did not cite the *Buffalo Tool* case, and in a lengthy opinion explained how it reached its result. Although this result was erroneous, it was not a sanction on the petitioners.

■ Finally, the petitioners assert that the Tax Court should have reopened the record to admit evidence of a sale of the properties by Klingbeil five and one-half years after the donation of the property. We do not feel that it was an abuse of discretion not to reopen the record. The sale of the property occurred a long time after the donation, and the property had undergone substantial changes, including the investment of over $400,000. Whether the Tax Court wishes to consider this evidence on reconsideration is in its sound discretion.

The opinion of the Tax Court is thus reversed, and the case is remanded to that court for further consideration consistent with this opinion.