**Robert KREIMES; Joan E. Kreimes,**
**Plaintiffs-Appellees,**

**v.**

**DEPARTMENT OF TREASURY,**
**Defendant-Appellant.**

No. 84–3072.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1985.

Decided June 18, 1985.

Patrick J. Foley, Jason P. Green, Tax Div., Dept. of Justice, Glenn L. Archer, Michael L. Paup, Gilbert S. Rothenberg, Bruce R. Ellisen, argued, Washington, D.C., for defendant-appellant.

Dennis E. Murray, argued, Murray & Murray Co., Sandusky, Ohio, for plaintiffs-appellees.

Before MARTIN and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.[1] In this tax refund case, the government appeals the award of attorney's fees to plaintiffs, Robert and Joan Kreimes, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982). The government contends that the plaintiffs are not entitled to attorney's fees because they were not the "prevailing party" under Section 2412(d) and that, if they were the prevailing party, the government's position in the litigation was "substantially justified." The government further argues that even if an award of attorney's fees was proper, the amount awarded should be reduced to reflect plaintiffs' limited success in the litigation and to exclude any award of attorney's fees for administrative proceedings.

## I.

The Kreimeses live in Sandusky, Ohio on a peninsula that juts into Lake Erie. In June and November 1972, storms on the lake damaged their property and they claimed a casualty loss of $1,570 on their 1972 tax return as attributable to these storms. In March 1973, another storm struck causing further damage to the Kreimeses' house and land. Because the region was declared a federal disaster area, the Kreimeses became eligible for a Small Business Administration loan to make repairs and applied for such a loan in the amount of $13,165. The Small Business Administration, however, only granted the Kreimeses $2,000 for repairs. The loan was subsequently forgiven by the Small Business Administration.

On their 1973 tax return, the Kreimeses claimed a casualty loss deduction of $27,-725 attributable to the March 1973 storm pursuant to I.R.C. § 165 (1982).[2] The Kreimeses apparently relied on a real estate appraiser's report that valued their loss at over $30,000. The Internal Revenue Service, however, disallowed the deduction.

The Kreimeses paid the resulting tax deficiency and filed an action in district court seeking recovery of the tax paid plus interest.

The case was tried before a magistrate, by consent of the parties, with a jury.[3] The jury found that the Kreimeses were entitled to a casualty loss deduction of $8,500 for the year 1973. The Kreimeses subsequently moved for judgment notwithstanding the verdict and for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1982). The magistrate denied the motion for judgment notwithstanding the verdict but granted the plaintiffs attorney's fees in the amount of $9,825. The government appeals from the award of attorney's fees.

## II.

Resolution of this case depends on our interpretation of 28 U.S.C. § 2412(d)(1)(A) (1982) which provides that "a court shall award to a *prevailing party* other than the United States fees and other expenses, ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was *substantially justified*." (emphasis added). The government maintains that it was the prevailing party in the case because the jury's verdict was closer to its position than the Kreimeses'. Further, the government contends that its litigating position was substantially justified. We shall consider each of these arguments in turn.

## A.

■ A plaintiff is a prevailing party under the Equal Access to Justice Act if he "'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433,

---

1. The Author acknowledges the substantial contribution of Judge Martin to this opinion.

2. In taking this deduction, the Kreimeses did not account for the $2,000 loan which the SBA had forgiven. A taxpayer is not entitled to a

casualty loss deduction for any loss made good by insurance or any other source. Treas.Reg. § 1.165–1(c)(4).

3. Direct appeal was taken to this Court pursuant to 28 U.S.C. § 636(c)(3) (1982).

103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *Omaha Tribe of Nebraska v. Swanson,* 736 F.2d 1218, 1220–21 (8th Cir.1984); *Austin v. Department of Commerce,* 742 F.2d 1417, 1419 (Fed.Cir.1984). The central issue in this case concerns the amount of deductible loss the Kreimeses incurred due to the 1973 storm.[4] Consequently, this is simply a tax valuation case of the kind which frequently confronts the tax court, the district courts, and this court. *See e.g., Estate of Kaplin v. Commissioner,* 748 F.2d 1109 (6th Cir. 1984). Thus, we must now determine what constitutes succeeding on a significant issue in a tax valuation case.

This is an issue of first impression in the tax context. A number of cases in the condemnation area, however, are instructive. In these cases, the dispute is over the amount of compensation which the government must pay to acquire land through eminent domain. The government has frequently deposited a sum which the plaintiff claims is insufficient. As a result, the issue for the jury is simply determining the value of the property; hence, they are analogous to the present type of case.

Two of the condemnation cases have held that the landowner is the prevailing party if he wins "far more than the government had offered," *United States v. 329.73 Acres of Land, Situated in Grenada and Yalobusha Counties, State of Mississippi,* 704 F.2d 800, 809 (5th Cir.1983) (en banc), or an award "substantially greater than the government's deposit," *United States v. 101.80 Acres of Land, More or Less, in Idaho County, Idaho,* 716 F.2d 714, 723

(9th Cir.1983). In *Grenada County,* the government had only offered $6,350 for a tract of land, and the jury awarded $48,260, the exact amount that the landowner was seeking. *Grenada County,* 704 F.2d at 801 n. 1. In *Idaho County,* the government had deposited $12,162.92 and $40,000 for two tracts of land and the jury awarded the landowners $22,500 and $144,600, respectively.[5] *Idaho County,* 716 F.2d at 716–17. Both courts found on the facts that the landowners had prevailed. *Grenada County,* 704 F.2d at 813 (implied); *Idaho County,* 716 F.2d at 726.

A more recent condemnation case, however, has rejected this approach and held that the landowner is a prevailing party if he wins any amount more than what the government offered. *United States v. 341.45 Acres of Land, More or Less, Located in the County of St. Louis, State of Minnesota,* 751 F.2d 924, 938 (8th Cir. 1984).[6] In *St. Louis County,* the government had offered $34,000, $6,000, and $2,200 for three tracts of land; the jury found that the tracts were worth $204,500, $36,460, and $25,500, respectively.[7] *St. Louis County,* 751 F.2d at 927. The Eighth Circuit concluded the landowners were the prevailing parties simply because they won more than the government offered.

In adopting this rule, the *St. Louis County* court explicitly rejected the "substantially greater" and "far more" tests of *Grenada County* and *Idaho County.* The Court, citing a dissent in *Grenada County,*[8] reasoned that no principled way exists to make a determination as to who is a prevailing party based upon the size of the

---

4. The magistrate in his first opinion determined incorrectly that the case presented two issues, *i.e.,* first, whether a loss was suffered due to the 1973 storm and, second, if so, what was the amount of the loss. After further briefing and argument, however, the magistrate in a second opinion recognized that the government conceded that a deductible loss had occurred and that the only dispute was over the amount.

5. The *Idaho County* opinion is unclear concerning what amount the landowners were seeking.

6. The Eleventh Circuit has also adopted this standard. *United States v. 640.00 Acres of Land, More or Less in the County of Dade, State of Florida,* 756 F.2d 842, 847–48 (11th Cir.1985).

7. In a companion case to *St. Louis County,* the United States had offered an oil company $965.76 for its mineral interests in a 107-acre tract. The jury eventually awarded the oil company $19,350. *St. Louis County,* 751 F.2d at 928.

8. *Grenada County,* 704 F.2d at 813, 816 n. 7 (Rubin, J., dissenting).

award. *St. Louis County*, 751 F.2d at 938. Because of this dilemma, the Eighth Circuit adopted the bright-line test that a party prevails if they win any amount more than what the government has offered.

■ The reasoning of the *St. Louis County* court is sound. The test adopted in *Grenada County* and *Idaho County* is plainly too vague. District courts will have difficulty in deciding whether a plaintiff has won "substantially" or "far" more than the government offered. Inconsistent adjudications will certainly be the result of such an indeterminate rule and, consequently, needless appeals will follow. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("request for attorney's fees should not result in a second major litigation"). Further, the standard espoused by the Fifth and the Ninth Circuits is not conducive to settlements. Since entering into an unfavorable settlement may result in the imposition of attorney's fees, *see Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid*, 717 F.2d 964, 966 (6th Cir.1983), neither side will want to accept an amount that is closer to the other side's position. In cases like this in which the issues are purely factual, we do not want to inhibit the settlement process.

In our view, the rule adopted by the Eighth Circuit also comports with the design and purpose of the Equal Access to Justice Act. The Act is designed so that a prevailing party is not entitled to attorney's fees if the government's position was substantially justified. In deciding whether the government's position was substantially justified, the district court will examine the merits of the government's arguments and determine whether the case should have been contested. If we adopted the "substantially greater" or the "far more" test, we would in essence be evaluating the merits of the case in determining who was the prevailing party. *See Grenada Coun-*

ty, 704 F.2d at 813, 816 n. 7 (Rubin, J., dissenting).

■ The purpose of the Equal Access to Justice Act is to award litigants "expenses of seeking review of or defending against unreasonable government action." *Grenada County*, 704 F.2d at 801 (footnote omitted). Congress did not want citizens to be deterred by the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings. Equal Access to Justice Act, Pub.L. No. 96–481, § 202, 94 Stat. 2321, 2325 (1980). Thus, the focus of the Act is on the position of the government and not on the plaintiff's position. We therefore hold that the government's position alone should be scrutinized under the Equal Access to Justice Act; the comparative position of the taxpayer is irrelevant.[9] Accordingly, we hold that the taxpayers in this case were the prevailing party because the jury found that they suffered a larger casualty loss than what the government would concede.

**B.**

■ We next consider whether the government's position was substantially justified. The government's position is substantially justified if it has a reasonable basis in law and fact. *Westerman, Inc. v. NLRB*, 749 F.2d 14, 17 (6th Cir.1984); *Wyandotte Savings Bank v. NLRB*, 682 F.2d 119, 120 (6th Cir.1982). The magistrate in this case determined that the government took an unreasonable position.

■ We will only reverse the magistrate's holding if there has been an "abuse of discretion." *Westerman, Inc.*, 749 F.2d at 17.

In [the context of the Equal Access to Justice Act], however, the term 'abuse of discretion' takes on a special meaning. [citation omitted]. With respect to findings based upon the district judge's assessment of the probative value of the evidence, a highly deferential standard of

---

**9.** Unreasonable positions taken by taxpayers can be remedied by the imposition of double costs for a frivolous appeal or by imposing "just

damages." *See* Fed.R.App.Proc. 38; *Martin v. Commissioner*, 756 F.2d 38, 40–41 (6th Cir. 1985).

review such as the clearly erroneous standard is in order. [citation omitted]. With respect to the district court's evaluation of the government's legal argument, a *de novo* standard is appropriate. [citations omitted].

*Sigmon Fuel Co. v. Tennessee Valley Authority,* 754 F.2d 162, 167 (6th Cir.1985). Since the central issue in this case is a purely factual one, the amount of deductible damage which the Kreimeses suffered due to the 1973 storm, we can only reverse the magistrate's decision if it is clearly erroneous.

■ The magistrate began his analysis by noting that the government's position was that other than the $2,000 forgiven by the SBA loan no "deductible damage occurred during the 1973 storm." [10] The magistrate then set forth his reasons concerning why the government's position was not substantially justified. First, according to the magistrate, the evidence contrary to the government's position was overwhelming. In our view, this conclusion was amply supported by the record. Initially, the magistrate pointed out that the destructive impact of the 1973 storm should have been apparent immediately to any reasonable person; due to the storm, the area where the Kreimeses resided was declared a disaster area. Further, almost all the other evidence, including testimony by three expert appraisers,[11] supported the taxpayer's position. In fact, the only support for the government's position was that the Small Business Administration only granted $2,000 of the $13,165 requested by the Kreimeses on their loan form. The proba-

tive force of this loan is diminished significantly because no evidence was introduced pertaining to how the $2,000 figure was reached.[12] Finally, the magistrate concluded, and we agree, that a reasonable position the government could have taken was to contest the amount of the deduction; rather, the government claimed that, other than the $2,000 loan which was forgiven, the entire deduction constituted a false claim. These reasons forwarded by the magistrate "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). We hold, accordingly, that the magistrate's ruling is not clearly erroneous.

■ The government finally contends that the Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), mandates reduction of the amount of attorney's fees awarded to reflect the Kreimeses' limited success.[13] We do not believe that *Hensley* requires such a result. The Court in *Hensley* did note that the degree of success was a critical factor in determining a proper award of attorney's fees. *Id.* at 436, 103 S..Ct. at 1941. Nevertheless, the Court explicitly rejected any mathematical approach to attorney's fees, *id.* at 435 n. 11 & 436, 103 S.Ct. at 1940 n. 11 & 1941, and emphasized that a district court has discretion in determining appropriate fee awards, *id.* at 437, 103 S.Ct. at 1941. The magistrate in the present case considered the Supreme Court's decision in *Hensley* and recognized that the plaintiffs obtained only about one-third of the relief they request-

10. We note that the magistrate's first opinion misinterpreted the government's position. *See supra* note 4. However, in a second opinion dealing solely with the attorney's fees issue the magistrate recognized that the government's position was that the Kreimeses incurred no deductible loss due to the 1973 storm.

11. A realtor testified that the loss in value to the property due to the storm was between $25,000 and $30,000; an engineer indicated that the cost to repair the Kreimeses' property would be approximately $26,000; and a real estate appraiser estimated that the loss due to both the 1972 and 1973 storms was $31,300.

12. The Small Business Administration, pursuant to its internal policy, destroyed all records relating to the Kreimeses' loan. Consequently, no evidence exists concerning the method or reasons by which the Small Business Administration arrived at the $2,000 figure.

13. Although *Hensley* dealt with attorney's fees under 42 U.S.C. § 1988 (1982), the standards set out in *Hensley* are applicable generally to attorney's fees cases. *E.g., Ruckelshaus v. Sierra Club,* 463 U.S. 680, 691–92 (1983); *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

ed. The magistrate, however, indicated that the jury in this case "lost its way" by arriving at a figure for which no rational basis existed [14] and that the Kreimeses' counsel could not have prevented this from occurring. Also, he described the presentation of the case by Kreimeses' counsel as "straight-forward" and "professional." Consequently, the magistrate reasoned that the Kreimeses should not be penalized because the jury went astray and hence concluded that this was not a proper case for proportional reduction of the attorney's fees based upon the degree of success. These findings by the magistrate make clear that he "considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. We therefore affirm the magistrate's refusal to proportionately reduce the award of attorney's fees.[15]

In summary, we hold that in a tax valuation case a taxpayer is a prevailing party for purposes of the Equal Access to Justice Act if he wins any amount more than what the government has conceded. We believe that such a bright-line rule will encourage settlements and comports with the policies behind the Equal Access to Justice Act. Further, in our view, the Supreme Court's decision in *Henlsey v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), does not mandate that attorney's fees be proportionately reduced to reflect limited success on the merits; rather, *Hensley* merely requires that the trier of fact consider the extent of relief obtained and explain why a reduction is or

is not warranted. In this case, the magistrate considered appropriately the taxpayer's limited success and set forth adequately his reasons for not reducing the award of attorney's fees. Accordingly, the decision of the magistrate is affirmed.

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.

I respectfully dissent. Although I agree completely with the majority's legal conclusions, I believe that the magistrate's holding that the government's position was not substantially justified is clearly erroneous. I therefore must conclude that the award of attorney's fees in this case was improper.

I agree with the majority that the government's principal position is that the taxpayers suffered no deductible loss other than the $2,000 loan forgiven by the SBA. In holding that this position was not substantially justified, the magistrate stated: [1]

Upon such reconsideration, I reaffirm the conclusions which I reached in my earlier memorandum and order (namely, that the plaintiffs were the prevailing party, and that the government failed to show that its position in this litigation was substantially justified). Without elaborating upon the reasons which I earlier expressed, I remain persuaded that there can be no question that the plaintiffs prevailed on the principal contention between the parties about whether deductible damage had occurred during the 1973 storm: the government remained unyielding in its position that no such

---

**14.** The $8,500 figure which the jury arrived at was never mentioned by either party.

**15.** The government contends on appeal that the taxpayers cannot collect attorney's fees for the administrative proceedings before the IRS. *Compare White v. United States,* 740 F.2d 836, 842 (11th Cir.1984) (attorney's fees incurred at administrative level not recoverable) *with Constantino v. United States,* 536 F.Supp. 60, 64 (E.D.Pa.1982) (attorney's fees incurred at administrative level recoverable). The government, however, failed to raise adequately this argument before the district court and, accordingly, we decline to consider the issue for the

first time on appeal. *E.g., Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Sigmon Fuel Co. v. Tennessee Valley Authority,* 754 F.2d 162, 164–65 (6th Cir. 1985); *Schneider v. Electric Auto-Lite Co.,* 456 F.2d 366, 375 (6th Cir.1972).

**1.** The quoted language is taken from the magistrate's second opinion which he issued.after the government asked him to reconsider the award of attorneys' fees. As the majority notes, majority opinion at n. 4, the magistrate's first opinion did not properly identify the government's contentions.

damage had occurred during that storm, advancing that theory even through trial.

At trial, the evidence to the contrary was overwhelming. In my opinion, to repeat my earlier statement in the August 9, 1983, memorandum and order, the destructive consequences of the March, 1983, storm should have been immediately apparent to a reasonable agent who was undertaking a modicum of fair-minded inquiry into the basis for the plaintiffs' claim on their 1973 tax return.

In addition, as also noted in my earlier memorandum and order, the government's position that no loss could be claimed for 1973 was taken at a time when the taxpayer-plaintiffs were foreclosed from amending their 1972 return to obtain the benefits of a deduction for that year. The government's position, therefore, is classic Catch-22: though there was a loss, it could not be claimed because the taxpayers, in the government's view, falsely sought to split the loss into two years. The fact that the plaintiffs were left, as a result of the government's position and the timing of its assertion, unable to claim the loss in either year is, in my opinion, a moderately aggravating factor to consider when assessing the question of substantial justification for the government's position.

A final additional consideration—or one which bears perhaps more mention than it received in my August 9, 1983, memorandum and order—is that the government's position was based, in the last analysis, upon the proposition that the plaintiffs were liars. The government did not simply contest the amount of the deduction (which might have been a more reasonable position); rather, they contended that no loss whatsoever had been suffered in the 1973 storm. In other words, the government's position was that every nickel being claimed as a deduction as a result of that event consti-

tuted a false claim. This aspect of the government's position is also, in my opinion, an aggravating circumstance when assessing whether the government's position was substantially justified.

The magistrate thus found that the government position was not substantially justified because (1) the evidence was overwhelming against it; (2) the government was attempting to keep the taxpayers from claiming the loss in either 1972 or 1973;[2] and (3) the government should have contested only the amount of the claim.

The second and third reasons set forth by the magistrate to support his holding are clearly irrelevant to the question of whether the government's position was substantially justified. As the majority recognizes, the central issue in reviewing the government's position in this type of case is whether that position has a reasonable basis in fact. *Westerman, Inc. v. NLRB*, 749 F.2d 14, 16 (6th Cir.1984). The magistrate's conclusion that the government's position was designed to prevent the taxpayer from claiming a deduction in either 1972 or 1973, besides being legally incorrect,[3] has no bearing on whether the government's position had a reasonable basis in fact. The magistrate's third justification—that the government should have quibbled over the amount of deduction instead of allowing no deduction—assumes that the government's position had no reasonable basis in fact. If the government had reasonable grounds to believe that the taxpayers suffered no deductible loss beyond the forgiven $2,000 SBA loan, then the government had no reason to allow the taxpayers a deduction beyond that amount. Therefore, the one justification that can support the magistrate's holding is his conclusion that evidence overwhelmingly contradicted the government's position, or, using the appropriate language, that the government's position had no reasonable

---

**2.** The magistrate's statements in this regard were directed to the government's contention that taxpayers had failed to prove what loss occurred in the March 1973 storm and what loss occurred in the 1972 storms.

**3.** Under I.R.C. §§ 1311–1314, the taxpayers would have been entitled to claim the loss for 1972 if the jury had determined that that was the appropriate year for the deduction.

basis in fact. To determine whether the magistrate's conclusion in this respect is clearly erroneous, I must review the evidence in the case, keeping in mind that the magistrate's determination should only be reversed if I am "left with the definite and firm conviction that a mistake has been committed." [4] *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). *See also Anderson v. City of Bessemer City,* — U.S. —, —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Several different pieces of evidence were produced regarding the amount of casualty loss suffered by the taxpayers. First, there was the $2,000 loan by the SBA to the taxpayers to repair their house. Although the government was not able to present documenting evidence from the SBA as to how the loan amount was calculated, both taxpayers testified that they had only received $2,000 of the total amount they had requested and that they had not contested the amount.[5]

Second, there was the $13,165 amount that the taxpayers requested in their loan application to the SBA. Although the taxpayers were not awarded this amount, it is evidence of what the taxpayer's themselves considered their loss to be.

Finally, three different appraisals as to the plaintiff's loss were entered into evidence. A relator, who testified for the taxpayers at trial, stated that he had examined the house after the 1973 storm and that he felt the Kreimeses had suffered between $25,000 and $30,000 in damages. An engineer, who also testified at trial, testified that the 1973 storm caused damages in the amount of $26,318 to the taxpayers' property. The engineer, however, did not inspect the taxpayer's property until three years after the storm. A real estate appraisers' report was also admitted into evidence which concluded that the storm had caused $31,300 in damages. This appraisal was seriously flawed, however, because it was based on a general decline of property values in the area hit by the storm and not on the taxpayers' own identifiable damages. *See infra* n. 6.

Given this evidence, I think the government clearly had a reasonable basis in fact for its position. That basis was the SBA's loan determination. To obtain the SBA loan, the Kreimeses had to fill out a comprehensive application including a list of all damaged or lost property. 14 C.F.R. § 123.8 (1973). The SBA then considered the proper amount of the loan based on the cost of "restoring, rehabilitating or replacing damaged or destroyed property." 13 C.F.R. § 123.5(b) (1973). Loan funds would then be granted "to restore [the Kreimeses'] home ... as nearly as possible to predisaster condition." 13 C.F.R. § 123.3(a)(1) (1973). An SBA loan determination would therefore be a reasonable indicator of how much damage the Kreimeses suffered in the March 1973 storm and how much it cost them to restore their house to its prior condition.

The SBA's loan determination is clearly relevant as to the amount of casualty loss deduction allowable under I.R.C. § 165. Under section 165, the Kreimeses were entitled to deduct the difference in the fair market value of their home before the storm and the fair market value after the storm. Treas.Reg. § 1.165-7(2)(i). Any reduction in fair market value arising from a general decline in market values in the area must be separated from the casualty loss, however, and is not deductible. *Id.* Thus, the Kreimeses were not entitled to deduct any reduction in the fair market value of their home resulting from the fact that their home was not as marketable because it was in a high risk area for

---

**4.** Although the clearly erroneous standard is a deferential one, "it does not render us a rubber stamp." *Estate of Kaplin v. Commissioner,* 748 F.2d 1109, 1110 (6th Cir.1984) (quoting *Miami Valley Broadcasting Corp. v. Commissioner,* 594 F.2d 556, 557 (6th Cir.1979)). We must still undertake a rigorous review of the record.

**5.** Moreover, the taxpayers only presented receipts to document repairs in the amount of $2,000.

storms.[6] The only loss that was deductible was "the actual loss resulting from damage to the property," *id.*, and the cost of repairs is acceptable evidence of such a loss. Treas.Reg. § 1.165–7(2)(ii). The SBA's loan, which was granted on the basis of cost of repairs, was excellent evidence of what was the Kreimeses' deductible loss under section 165.

The magistrate even recognized that the $2,000 SBA determination was a reasonable appraisal of the amount of damage to the taxpayer's house. In denying the plaintiff's motion for judgment notwithstanding the verdict, the magistrate stated:

> The gravaman of plaintiffs' motion for judgment n.o.v. or an additur is that the jury could have reached only one verdict as to the amount of the deduction to which the plaintiffs were entitled: namely, $27,750. This is, in my opinion, incorrect. Although the evidence was overwhelming that damage had been suffered as a result of a storm in 1973, several figures were available to the jury when it came to determine the amount of the deduction which could properly have been claimed for that tax year. *These included $2,000 (amount expended for repairs for which receipts were available: also, amount of Small Business Administration loan);* $13,165 (amount of loss as stated in plaintiffs' application for the SBA loan); and $27,750 (amount of claimed deduction).

> Because the evidence could have led the jury to return a verdict in any one of three amounts, plaintiffs' motion for judgment n.o.v. cannot be granted.

(emphasis added). The magistrate's own conclusion that a reasonable jury could have found that Kreimeses' loss was limited to the $2,00 SBA loan seriously undermines his holding that the government was not substantially justified in relying on the SBA's determination.

Moreover, the jury's determination as to the amount of loss could easily lead one to conclude that they found the SBA loan to be very probative evidence. The jury determined that the taxpayers were only entitled to an $8,500 casualty loss deduction. Although one can only speculate as to how the jury arrived at that amount,[7] it is significant that that amount was much closer to the $2,000 SBA determination than to any of the taxpayers' appraisals.

I therefore must conclude that the magistrate's holding that the government's position was not substantially justified is clearly erroneous. In my view, as long as the government has a reasonably authoritative appraisal of a taxpayer's claimed loss, the government's position is substantially justified if it relied on that appraisal. *See United States v. 341.45 Acres of Land, More or Less, Located in the County of St. Louis, State of Minnesota,* 751 F.2d 924, 940 (8th Cir.1984) (government's position is substantially justified if it is based upon qualified appraisal). Without such a rule, the courts can reach anomalous results as in the present case where the government successfully reduced a taxpayer's claimed deduction by almost $20,000, resulting in an increased tax liability, but at the same time was forced to pay out a larger amount in attorneys' fees. The net result is a loss to the government even though it litigated what turned out to be a valid claim. I do not believe that the purposes behind the Equal Access to Justice Act require such an odd result. I therefore dissent.

**6.** It was for this reason that the taxpayer's appraisal following the storm was seriously flawed. The appraiser simply compared market values of similar properties in the area before and after the storm and concluded that market values in the area had fallen 38%. Based on this estimate, the appraiser, concluded that the taxpayers' home had decreased in value 38% from $82,500 to $51,500 for a loss of $31,300. This conclusion is obviously inadequate for the purposes of section 165 because it fails to identify what part of the decrease in market value was attributable to actual damages and what part was attributable to the fact that prospective buyers do not want a house where it is likely to be hit by a storm.

**7.** The magistrate speculated that the jury subtracted the amount of an insurance award from the amount of loss to reach the $8,500 figure.