PHIL SMIDT & SON, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 85–2749.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1986.

Decided Jan. 15, 1987.

Before BAUER, Chief Judge, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The petitioner, Phil Smidt & Son, Inc. (Phil Smidt), applied for an award of attorneys' fees, costs and expenses pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (Supp. III 1985).[1] That application arose out of backpay litigation initiated by the General Counsel of the National Labor Relations Board (NLRB or Board). The Board, finding that the General Counsel's position in the backpay litigation was substantially justified, dismissed the petitioner's application. For the reasons which follow, we vacate the Board's order and remand this case for determination of the amount of costs, expenses and attorneys' fees to be awarded to the petitioner.

I

*A. The Underlying Litigation*

In the underlying proceeding, the NLRB found that the petitioner had violated section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), by suspending and discharging an employee, Josephine Faught, for engaging in protected concerted activity under the NLRA. To remedy that violation, the Board ordered the petitioner to pay Ms. Faught all of her lost earnings and benefits. On appeal, this court affirmed the Board's order. *NLRB v. Phil Smidt & Son, Inc.*, 729 F.2d 1464 (7th Cir.1984). The only remaining ques-

Timothy F. Kelly, Beckman, Kelly & Smith, Hammond, Ind., for petitioner.

Eric G. Moskowitz, NLRB (Aileen A. Armstrong-NLRB), Washington, D.C., for respondent.

1. The Equal Access to Justice Act (EAJA) was originally enacted in 1980. Pub.L. No. 96–481, 94 Stat. 2325 (1980). The original EAJA expired on October 1, 1984. However, this Act had a sunset provision that extended the coverage of the EAJA to those cases commenced but not finally resolved prior to October 1, 1984. *See K & I Transfer & Storage, Inc. v. NLRB*, 805 F.2d 749, 752 n. 5 (7th Cir.1986) (citing *Berman v. Schweiker*, 713 F.2d 1290, 1294 n. 13 (7th Cir. 1983)).

On August 5, 1985, a new version of the EAJA came into effect. Section 7 of the new Act provides: "Except as otherwise provided in this section the amendments made by this Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act." Pub.L. No. 99–80, § 7, 99 Stat. 183, 186 (1985). The merits of the case underlying this fee petition were pending on October 1, 1984. However, on August 5, 1985, only the fee petition was pending. Since the difference between the old and the new Act which is relevant to this case involves only a clarifying provision, *see infra* note 4, we shall apply the provision of the new EAJA. *See K & I Transfer & Storage*, 805 F.2d at 752. As noted, *infra* note 5, we also hold that, despite the ambiguities in the new Act's legislative history, that Act is governed by the same reasonableness standard emphasized by the old version.

tion, therefore, concerned the amount of backpay to which Ms. Faught was entitled.

According to the Board, backpay awards are determined by first estimating an employee's adjusted gross pay during the discharge period and then reducing that amount by any income that the employee may have earned during the same period through other endeavors (interim earnings). In this case, Nancy Harris, one of the NLRB's field examiners, made two distinct backpay computations. The first computation, outlined in an April 6, 1984 letter to Phil Smidt, indicated that Ms. Faught was entitled to a total award of $980.29 (representing $611.93 in backpay and $368.36 in interest). This calculation was based upon information gathered by Ms. Harris through a number of interviews and through her review of Ms. Faught's tax returns. In her second computation, outlined in an April 17, 1984 letter to Phil Smidt, Ms. Harris maintained that Ms. Faught was eligible to receive a backpay award of $5,249.31 (representing $3,234.82 in backpay and $2,014.49 in interest). The difference between these two computations, irrespective of interest on the backpay awards, is $2,622.89. Of that amount, $713.92 was attributable to Ms. Harris' recomputation of Ms. Faught's adjusted gross pay. However, the bulk of the difference, $1,908.97, resulted from Ms. Harris' new-found belief that Ms. Faught had no interim earnings. Ms. Harris arrived at this new position on interim earnings, despite tax records to the contrary, because Ms. Faught submitted an affidavit (with allegedly supporting documentation) that stated that Ms. Faught's tax returns were erroneous and, in fact, that she sustained a loss during the discharge period.

Because of the petitioner's failure to pay voluntarily the amount itemized in Ms. Harris' second letter, the NLRB's Regional Director issued a Backpay Specification on May 11, 1984, requiring the petitioner to pay Ms. Faught a backpay award of $3,229.28, irrespective of withholding taxes and accumulated interest. Additionally, and more importantly for purposes of this case, the Regional Director affirmatively averred in the Backpay Specification that Ms. Faught "did not earn any interim earnings but rather suffered a loss" during her interim employment period. General Counsel's Ex. 1(c) at 4. On July 19, 1984, the first scheduled day of hearings regarding the Backpay Specification, the petitioner made an offer of settlement in the amount of $980.29 (equivalent to the amount of Ms. Harris' original backpay computation). Apart from stating the terms of the settlement, the offer also indicated that, if the offer should not be accepted and if the petitioner should succeed on the backpay issue in the administrative hearing, the petitioner would "proceed pursuant to 5 U.S.C. § 504 [of] the Equal Access to Justice Act to obtain full reimbursement for any costs and expenses incurred as a result of Ms. Faught's or the Board's failure to accept this good faith offer." Phil Smidt's Ex. 9 at 2. The settlement offer was rejected and the administrative hearings continued.

At the hearing, Phil Smidt presented four arguments in defense against the Backpay Specification. The administrative law judge (ALJ) reviewed the first three arguments—relating to 1) the duration of the backpay period, 2) Ms. Faught's alleged withdrawal from the labor market, and 3) the appropriate comparisons for estimating the backpay award—and found them to be without merit. However, the ALJ found substantial merit in Phil Smidt's fourth argument. Here, the petitioner had challenged the Board's assertion that Ms. Faught had no interim earnings during the discharge period. Upon reviewing this issue, the ALJ found that the General Counsel's claim that Ms. Faught had no interim earnings was unsupportable on the record. In fact, while the ALJ agreed with Ms. Faught that her tax returns were erroneously completed, he found that those returns *understated*, not overstated, her net income. Accordingly, the ALJ held that Ms. Faught was entitled to a backpay award of only $430.37, irrespective of taxes and interest. Therefore, at the close of all the proceedings, the petitioner was re-

quired to pay only $631.27 ($430.37 in backpay, plus $297.00 in interest, less $96.10 in taxes)—markedly less than the $980.29 for which the petitioner was willing to settle and grossly less than the $5,249.31 sought by the NLRB's General Counsel.

## B. The EAJA Award

The petitioner applied for an award of fees, costs and expenses under the EAJA, 5 U.S.C. § 504. Under the EAJA,

> when an agency ... conducts an adversary adjudication and loses, the agency shall award fees and other expenses incurred by the prevailing party in connection with that proceeding. The agency can avoid the imposition of fees and costs only by demonstrating that its position as a party to the proceeding was "substantially justified," or that special circumstances exist that would make such an award unjust.

*Temp Tech Indus., Inc. v. NLRB,* 756 F.2d 586, 588–89 (7th Cir.1985). The ALJ dismissed the application. The ALJ grounded his decision on the fact that, with respect to the issue of interim earnings, the burden of proof in the underlying action rested with Phil Smidt, not the General Counsel. Since the General Counsel did not "lose" on any particular issue on which he had the burden of proof, the ALJ determined that the "General Counsel was the prevailing party" even though Ms. Faught found herself in a substantially worse position by litigating the backpay issue. Phil Smidt's App. at 6. By implication, then, the ALJ found that the petitioner was *not* a prevailing party and, therefore, was not entitled to an award under the EAJA. On review, a panel of the NLRB disagreed in part with the ALJ and noted that the petitioner "may have been a prevailing party in the backpay

proceeding." *Id.* at 1 n. 1. Nonetheless, the Board ultimately agreed with the ALJ's conclusion because it found "that the General Counsel's position in issuing the backpay specification and proceeding to a hearing was 'substantially justified' within the meaning of [the] EAJA." *Id.* Subsequently, Phil Smidt filed its petition for review in this court.

## II

### A

We start by noting our standard for reviewing the Board's determination. As mentioned earlier, a party is entitled to an award under the EAJA only if 1) that party was a prevailing party in the agency's adversary adjudication, and 2) the agency's position was not substantially justified. Since the Board conceded at oral argument that the petitioner was a prevailing party,[2] we need only consider whether the Board's position in the backpay proceeding was substantially justified.[3] In this regard, it is clear that we must disapprove the Board's denial of fees only if we find that the Board's decision "was unsupported by substantial evidence." 5 U.S.C. § 504(c)(2).

### B

In EAJA litigation of this type, the NLRB's General Counsel bears the burden of proving that his position in the backpay proceeding was substantially justified. *See Berman v. Schweiker,* 713 F.2d 1290, 1293 n. 9 (7th Cir.1983). The "position of the agency" which must be substantially justified is not just the legal position which the government took in the underlying litigation but also the action which led to the

---

**2.** The Board's concession is unremarkable in light of the weight of authority in other EAJA circumstances. *See, e.g., Kreimes v. Department of Treasury,* 764 F.2d 1186, 1192 (6th Cir.1985) ("in a tax valuation case a taxpayer is a prevailing party for purposes of the Equal Access to Justice Act if he wins any amount more than what the government has conceded"); *United States v. 341.45 Acres of Land,* 751 F.2d 924, 937

(8th Cir.1984) ("the term 'prevailing party' may include a property owner who wins by judgment or negotiation and settlement more than the government offered or admitted liability for in a condemnation case").

**3.** The Board has made no attempt to argue that special circumstances exist which would make an award of fees unjust.

litigation.[4] Furthermore, "it is settled in this circuit that an agency's position is substantially justified [only] if it has a 'reasonable basis in law *and fact.*'" *Temp Tech,* 756 F.2d at 590 n. 4 (citing *Ramos v. Haig,* 716 F.2d 471, 473 (7th Cir.1983) and *Berman v. Schweiker,* 713 F.2d 1290 (7th Cir. 1983)) (emphasis added).[5] As Judge Becker of the Third Circuit noted in *Donovan v. DialAmerica Mkting, Inc.,* 757 F.2d 1376, 1389 (3d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985), "[t]o satisfy its burden the government must demonstrate (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced."

 The Board argues that its position in the backpay proceeding was substantially justified because 1) it did not have the burden of proof on the issue of interim earnings, and 2) it prevailed on the petitioner's other three defenses to the Backpay Specification. Under the circumstances of this case, we do not find the NLRB's "burden of proof" argument dispositive.[6] An agency's position is substantially justified only when it has a reasonable basis in law

*and fact.* Thus, even if an agency's legal argument is perfect (including the allocation of burdens of proof), the agency may still be liable for costs, fees and expenses under the EAJA if the agency has knowledge that the presumed facts supporting its position are without merit. The Regional Director in his Backpay Specification, affirmatively stated that Ms. Faught had no interim earnings during the discharge period. This factual allegation was a material factor in the backpay proceeding, because the net backpay award is determined by subtracting interim earnings from the employee's estimated gross backpay. The Board assumed no interim earnings for the purpose of its second set of computations, and thus, increased its total estimated backpay award from $980.29 to $5,249.31. More importantly, given the petitioner's willingness to settle this entire matter for the amount initially calculated by Ms. Harris, the Board's position provoked the continuing litigation (and accompanying fees and expenses) in this case. Therefore, regardless of the allocation of burdens of proof, it was the Board's factual averment concerning interim earnings that substantially prompted the backpay hearing in this

---

4. 5 U.S.C. § 504(b)(1)(E). At one time, there was considerable disagreement as to the proper definition of the term "position of the agency" (or "position of the United States"). *See Temp Tech Indus., Inc. v. NLRB,* 756 F.2d 586, 589–90 (7th Cir.1985). However, the 1985 amendments have resolved this problem. Furthermore, it is clear that these amendments apply to the case at bar:

As the Fifth Circuit has already noted in *Russell v. National Mediation Board,* 775 F.2d 1284, 1286 (5th Cir.1985), the House Report makes it clear that the definition of "position of the United States" in the 1985 amendments is intended to clarify existing law and therefore applies to all matters pending on, or commenced on or after October 1, 1981. *Accord American Pacific Concrete Pipe Co. v. NLRB,* 788 F.2d 586 (9th Cir.1986); *see also Gotches v. Heckler,* 782 F.2d 765, 766–67 (7th Cir.1986); *United States v. Kemper Money Market Mutual Fund,* 781 F.2d 1268, 1270 n. 1 (7th Cir.1986).

*K & I Transfer & Storage,* 805 F.2d at 752.

5. We are aware that the House Report accompanying the 1985 amendments states, at one point, that substantial justification requires more than mere reasonableness. H.R.Rep. No. 120, pt. 1,

99th Cong., 1st Sess. 9, *reprinted in* 1985 U.S. Code Cong. & Admin.News 132, 138. However, as noted by the *Russell* court, the remainder of the legislative history is ambiguous since the co-sponsor's comments during the floor debates indicate that an action may be substantially justified even though it is arbitrary and capricious. *See Russell,* 775 F.2d at 1288–89. In the face of this ambiguity, we, like the Fifth Circuit, shall continue to apply the reasonableness standard set forth in *Temp Tech,* 756 F.2d at 590 n. 4.

6. We note that other courts have not found that the "burden of proof" issue presents any obstacles to an award under the EAJA. For example, it is clear that "[a] taxpayer seeking a tax refund bears the burden of proving that the assessment was incorrect and proving the correct amount of the tax owed." *Ray v. United States,* 762 F.2d 1361, 1362 (9th Cir.1985) (citing *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935)). Nonetheless, if the taxpayer is successful, he may still collect fees under the EAJA. *See Kreimes,* 764 F.2d at 1192.

case. Thus, we must determine whether the Board had a reasonable basis in fact when it affirmatively alleged that Ms. Faught had no interim earnings.

At the administrative hearing, Ms. Harris was called to testify regarding the procedures she had used in reaching her second backpay calculation. Because there was some ambiguity regarding her exact testimony, the ALJ attempted to summarize Ms. Harris' remarks. At that point in the proceedings, the following dialogue transpired between Ms. Harris and the ALJ:

[ALJ:] The issue of interim earnings is not the burden of General Counsel to show or the Regional Director. That is Respondent's [Phil Smidt's] burden and what she [Ms. Harris] said to you is once, for example, if, if a discriminatee comes in and reports $10,000.00 of interim earnings, that is what they put down. They don't go out and make an independent investigation of her social security, that is what it is. Because it is for you to prove otherwise. And once Ms. Faught came in and said the, this amount of adjusted gross income from Mary Kay Products is inaccurate because I have "X" number of expenses which totally wipes it out, they take her word for it because it is ultimately not General Counsel's burden, is that correct?

[MS. HARRIS:] Yes sir.

Tr. 85. The record therefore supports the conclusion that Board Agent Harris was willing to compute Ms. Faught's backpay award without any attempt to independently corroborate her allegation that she realized no interim earnings. We need not decide, however, whether such a situation, without more, would constitute a reasonable action on the part of the NLRB. In this case, Board Agent Harris had before her affirmative evidence, in the form of tax returns, which clearly indicated that Ms. Faught had interim earnings. Moreover, the documentation submitted in support of Ms. Faught's affidavit—documentation which she initially supplied to the NLRB—contained detailed information from which the ALJ was able to conclude that Ms.

Faught's income was, in fact, *understated* on her tax forms.

■ Under these circumstances, we cannot say that the evidence in the record supports the Board's conclusion that the agency's position was substantially justified. At the time it took the position that Ms. Faught "did not earn any interim earnings but rather suffered a loss," General Counsel's Ex. 1(c) at 4, the agency not only knew that there was conflicting evidence on this point but it failed to take adequate measures to assess that evidence. As the analysis of the ALJ demonstrates, it would have taken little effort to determine that the evidence weighed heavily in favor of a finding that, contrary to Ms. Faught's uncorroborated contention, she did, in fact, have interim earnings.

As the NLRB notes in its brief, the EAJA was enacted to protect "the little guys, not the giants" from unwarranted litigation by the government. Respondent's Br. at 6 (quoting S.Rep. No. 253, 96th Cong., 1st Sess. 5 No. 1 (1979)). Here, a relatively small business was willing to pay the wronged employee the full amount determined by the first calculation based on solid documentation, including tax returns. Due to the Regional Director's failure to exercise the proper care in the formulation of its factual submission to the Board, that business was forced to defend itself against a groundless demand far in excess of what it was obligated to pay. This is precisely the sort of situation Congress intended to remedy.

Accordingly, we set aside the Board's order and remand this case for the purpose of determining the amount of costs, expenses and attorneys' fees to be awarded to the petitioner.

It is so ordered.