PLINY A. PRICE and MARGARET PRICE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Price v. Commissioner
Docket No. 10370-83.
United States Tax Court
T.C. Memo 1985-182; 1985 Tax Ct. Memo LEXIS 452; 49 T.C.M. (CCH) 1236; T.C.M. (RIA) 85182; April 15, 1985. Ronald W. Gabriel and Charles M. Steines, for the petitioners. Nancy Herbert and Robert J. Kastl, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $11,957 in petitioners' Federal income taxes for 1979. In dispute is the value of certain items donated to the Gemological Institute of America in 1979. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated herein by this reference. Petitioners were residents of Columbus, Ohio, at the time *453 they filed their petition herein. They filed a joint Federal income tax return for the taxable year 1979 with the Cincinnati Service Center, Covington, Kentucky. In November 1978, Pliny A. Price (petitioner) purchased a parcel of gemstones, labeled tourmalines with a stated total weight of 198.88 carats, from Gemarvi Pedras Preciosas, Limitada Governador (Gemarvi) for $3,093.20. On November 7, 1978, petitioner purchased a suite of sapphires weighing 37.76 carats from Colin M. Curtis for $3,786. In or about December 1979, petitioner donated the gemstones and the sapphires to the Gemological Institute of America (GIA). Petitioner is a physician with no demonstrated experience or expertise in gems or gemstones. On their tax return for 1979, petitioners claimed charitable contributions of $15,910.40 for donation of the gemstones and $15,910.65 for donation of the sapphires and one ruby to GIA. Attached to the tax return was an appraisal of the gemstones by Jerry E. Call, whom petitioner believed to be an employee of Gemarvi, dated August 20, 1979. That appraisal described the gemstones as "1 lot of Tourmaline * * * with a lot average of $80.00 per carat" for a total of $15,910.40. *454 Also attached to the tax return was an appraisal report dated March 28, 1980, by David P. Wilber, who valued the sapphires and the ruby, in total, at $15,910.65, of which $1,120 was attributed to the ruby. In the statutory notice of deficiency, respondent disallowed the amounts claimed in excess of the cost of the donated items. On or about May 15, 1984, William W. Pinch (Pinch) executed a series of 94 certificates of appraisal of the gemstones in issue. The individual values assigned by Pinch to the gemstones ranged from $10.15 to $241.92. The total value attributed by Pinch to the gemstones was $9,179.01. [1]
Pinch is a collector of mineral specimens and the owner and curator of the Pinch Mineralogical Museum, which contains approximately 16,000 mineral specimens. [2] He has been engaged in the field since 1947 and is sufficiently knowledgeable to be *455 regarded as an expert in mineralogy. He is not, however, formally trained in gemology or appraisal techniques. From 1979 through the time of trial, Pinch was employed by Investment Rarities to buy gemstones and train employees who would be selling gemstones over the telephone. Investment Rarities sold gemstones to the public for a standard markup of 25 percent. Among the items sold by Investment Rarities during 1979 were tourmalines similar to those in issue in this case. The format of Pinch's certificates of appraisal and language defining fair market value were drafted by petitioners' counsel. Although three of the gemstones were not tourmalines but in fact were beryls, Pinch described and appraised each as a tourmaline. The weight of one of the items was incorrectly described in Pinch's appraisal. Errors in the appraisals were made by Pinch because he "hurried through them very rapidly." He did not determine alternative values based on different potential markets *456 for the items. The value of a tourmaline depends on the color and the intensity of color, among other things. Pinch had not had his color vision tested for several years. Elly Rosen (Rosen), respondent's expert, is a gemological appraisal consultant and a Graduate Gemologist of GIA. The latter title was earned by completion of proficiency examinations and a 2-year course of instruction on diamonds, colored stones, and gem identification. He is a senior member of the American Society of Appraisers, certified in gems and jewelry upon completion of an examination on appraisal ethics, appraisal theory, and gems and jewelry. He teaches courses in the appraisal of gems and jewelry, including appraisal ethics, research techniques, identification and authentication procedures, terminology, and report writing. He is a member of various other professional societies. During the years 1978 to 1980, he performed in excess of 100 appraisals encompassing approximately 1,000 items. Rosen has experience as a colored stone wholesale dealer and has dealt with thousands of gemstones, including hundreds of tourmalines. His color discrimination was tested and rated superior in May 1984. Rosen *457 carefully examined each of the gemstones in issue here, spending at least 15 minutes per stone. He identified 3 of the 94 gemstones as beryls, after submitting them to laboratory analysis. He found that the weight of one of the tourmalines was 6.33 carats, not 2.07 carats -- the amount stated in Pinch's certificate of appraisal. He established the color of each stone by reference to a standard and considered the intensity of color of each stone, including its brilliance and the zoning within the stone. He determined the clarity of each stone by use of a grading system and applied standards in describing cutting and polish. Rosen determined the most common market for the gemstones, as a parcel and individually. He determined that the total value of the items was $1,424.94 if sold as a parcel and $2,125.25 if sold individually. Tourmalines are rarely sold as loose stones by jewelers, but there is a viable market for the stones among individuals for tax shelters and investments. The most common market for a parcel of gemstones, such as those in issue here, however, would be a dealer selling to a dealer, who might then separate the stones for a later sale. Considering the 94 gemstones *458 individually for purposes of determining the most common market for each, nine would be most commonly sold to collectors and the others most commonly sold by a dealer to a retail manufacturing jeweler. ULTIMATE FINDING OF FACT The value of the 94 gemstones donated by petitioners to GIA was $2,125.25 on December 20, 1979. OPINION Petitioners have the burden of proving that they are entitled to the deductions that they claim. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure. There is no dispute here that donations were in fact made to a qualified donee under section 170(a). [3] The dispute is over the amount of the deduction, which is the fair market value of the property, to wit, "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Section 1.170A-(c)(2), Income Tax Regs.
*459 Petitioners presented no evidence as to the value of the sapphires and the ruby donated to GIA in 1979 other than the cost of the sapphires. They have therefore failed to sustain their burden of proof as to the value of those items in excess of the amount determined by respondent. Petitioners presented the testimony of Pinch as to the value of the gemstones. His appraisals were admittedly "very rapidly" done, were partly composed by petitioners' counsel, and incorrectly described the items appraised. Pinch testified that he based the values on the price at which Investment Rarities would have sold the items. We are not satisfied that telephone purchasers of tourmalines, items whose value depends on color, represent the knowledgeable purchasers assumed in the recognized and applicable definition of fair market value. Moreover, Pinch had testified that sales by Investment Rarities were at a "standard markup of 25 percent" to the public. His testimony that the value of the gemstones in December 1979 was three times the cost to petitioners 13 months earlier thus lacks credibility. We do not accept his conclusions as to value. See Chiu v. Commissioner, 85 T.C.     (April 15, 1985). *460 Respondent contends that the evidence compels a conclusion that the fair market value of the items donated was, as testified to by Rosen, less than the cost of the items. Because respondent has not requested a deficiency greater than that set forth in the statutory notice and based on the cost of the items in issue, the difference is not material in this case. We are, however, required to determine the fair market value of the items as of date of donation, and we do so. In many cases, actual sales of property to be valued are the best evidence of fair market value. See Estate of Kaplin v. Commissioner,748 F.2d 1109 (6th Cir. 1984), revg. a Memorandum Opinion of this Court; Tripp v. Commissioner,337 F.2d 432 (7th Cir. 1964), affg. a Memorandum Opinion of this Court; Chiu v. Commissioner,supra. We must also, however, consider reliable opinion testimony as to value. Because of Rosen's particular experience with sales of the items valued by him in this case, the care with which he approached the appraisal process, and the failure of petitioners *461 to impeach his testimony, we believe that his opinion in this case, both as to the most common market for the items and the fair market value of them in that market, is reliable. We have no evidence here of the circumstances in which petitioners purchased the items later donated by them. We have no evidence regarding the reliability of the seller. We have no testimony from the petitioners, [4] the seller, or the persons whose appraisals were attached to the tax return, and we therefore infer that their testimony would not be helpful to petitioners. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The items to be appraised were sold as tourmalines although some of them were beryls. They were priced in bulk by average carat value. The likelihood that the price charged to petitioners was inflated is *462 increased by petitioners' apparent lack of knowledge about the property to be valued and their reliance on a much higher valuation given by a person whom petitioners believed to be an employee of the seller. In the absence of contrary evidence from petitioners, the facts of this case justify the inference that the items in question were acquired expressly for the purpose of donating them to charity and claiming a charitable contribution deduction at an inflated value. Under all of these circumstances, cost is not the most reliable evidence.See Skripak v. Commissioner, 84 T.C.     (Feb. 26, 1985). We conclude that the fair market value of the gemstones on the date of donation was $2,125.25, which is less than the amount allowed in the statutory notice. Decision will be entered for the respondent.
Footnotes
1. Neither party bothered to total the amounts shown on the 94 certificates. Petitioners contend in their reply brief that the amount claimed on their return should be allowed, although there is absolutely no evidentiary support for that value. Briefs that are not more helpful to the Court are not helpful to the parties.↩
2. The parties stipulated that testimony establishing the general qualifications of the experts in Chiu v. Commissioner,↩ 85 T.C.     (April 15, 1985), would be incorporated into the record in this case.
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
4. This case was originally set for trial May 7, 1984, in Columbus, Ohio, but was continued at the request of petitioners because of the unavailability of Pinch. The place of trial was changed to Washington, D.C., but petitioners were given the opportunity to testify in Columbus, Ohio.↩