BERNARD BROAD AND ANNE BROAD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Broad v. Commissioner
Docket No. 7961-83.
United States Tax Court
T.C. Memo 1986-340; 1986 Tax Ct. Memo LEXIS 264; 52 T.C.M. (CCH) 12; T.C.M. (RIA) 86340; August 4, 1986. Ralph H. Kline, for the petitioners. James P. Clancy, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACTS AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1978
$12,886
$644
1979
$15,697
$785
The issues for decision are: (1) what was the fair market *265 value of grave sites contributed by petitioners to two churches; (2) would petitioners have realized ordinary income if they had sold the grave sites, thus reducing the amounts of the contributions under section 170(e)(1); and (3) are petitioners liable for an addition to tax under section 6653(a)? FINDINGS OF FACT Some of the facts have been stipulated and are so found.The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioners, Bernard and Anne Broad, husband and wife, resided in Princeton, New Jersey, when they filed their petition in this case. For the taxable years 1978 and 1979, Bernard Broad earned $118,157.95 and $112,000.00, respectively, as an anesthesiologist. On their joint income tax return for 1978, petitioners deducted charitable contributions totaling $29,674.31 of which $25,200 was attributed by petitioners to 84 grave sites located in the Philadelphia Memorial Park in Frazer, Pennsylvania ("Philadelphia Memorial"). These grave sites had been transferred during the year by petitioners to St. Mark's Reformed Episcopal Church in Jenkintown, Pennsylvania ("St. Mark's"). On their joint return for 1979, petitioners deducted *266 $34,223.55 in chartitable contributions of which $30,600 was attributed by petitioners to 102 grave sites in Philadelphia Memorial which they had transferred during the year to the St. John's Lutheran Church in Melrose Park, Pennsylvania ("St. John's"). For several years prior to their being bought by petitioners, the 186 grave sites at Philadelphia Memorial were owned by the Seamen's Church Institute in Philadelphia, Pennsylvania ("Seamen's"). Seamen's had acquired the sites as part of a donation. Between 1974 and 1977, Philadelphia Memorial unsuccessfully attempted to buy the sites from Seamen's for $1.00 each. Seamen's received no other offer for the sites until November 11, 1977 when Samuel Landsberg, an accountant practicing in Jenkintown, purchased them together with several more for $4.73 each. Before receiving title to the sites, Landsberg met with Harry Schwartz, petitioners' accountant, in order to ascertain whether Schwartz knew of anyone who would be interested in buying the grave sites. After determining that a gift of the grave sites would qualify as a charitable contribution, Schwartz helped arrange the sale by Landsberg to petitioners of the 186 sites. Schwartz *267 received a fee from Landsberg for such services. Petitioners' purchase from Landsberg occurred in two transactions. They initially bought 84 sites for $5,000.00 on August 25, 1977 and then bought the other 102 sites for $6,000.00 on August 28, 1978. [2] On the average, petitioners paid a little less than $60.00 per site. At the request of Landsberg, Arthur Klein, president of Philadelphia Memorial and an acquaintance of Landsberg, forwarded to petitioners letters dated November 16, 1977, and December 29, 1978, stating that the then current selling price of each of the grave sites was $300.00. Landsberg also located the donees for petitioners. In 1978, he arranged the donation to St. Mark's of 156 grave sites, including the first 84 sites bought by petitioners as well as sites owned by six other individuals. In a similar manner, Landsberg arranged the donation to St. John's in 1979 by driving up to the church and telling the church officers that he wanted to donate some grave sites. When the church officers asked for an explanation, he replied that the gift was *268 part of a tax shelter. When St. John's accepted the offer, Landsberg arranged the transfer to St. John's of petitioners' remaining 102 grave sites and over 600 grave sites owned by other individuals. At the time of trial, St. John's still owned a majority of the sites donated by petitioners in 1979. However, St. Mark's had assigned its donated sites back to Landsberg. In exchange for these lots, Landsberg transferred to St. Mark's an equal number of grave sites in White Marsh Memorial Park ("White Marsh"). St. Mark's later sold most of the White Marsh sites in a bulk sale for $12.50 each. St. Mark's remaining sites were transferred to some of its parishioners in exchange for $175.00 contributions. OPINION Amount of Charitable Contributions
Respondent agrees that petitioners are entitled to deductions for charitable contributions because of the transfers of the grave sites to St. Mark's and St. John's. The parties disagree with respect to the amount of such deductions. Under section 170, the amount of a contribution in property generally is the fair market value of the property contributed. [3] Fair market value is defined in respondent's regulations as "the price *269 at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Section 1.170A-1(c)(2), Income Tax Regs. Fair market value as of a given date is a question of fact to be resolved by considering all relevant evidence in the record. Kaplan v. Commissioner,43 T.C. 663, 665 (1965). Respondent contends that the fair market value of the grave sites at the time they were donated was at most $12.50 each, the price St. Mark's received for the White Marsh sites obtained in the exchange with Landsberg. Petitioners argue that the fair market value of the sites was $300.00 each, the "selling price" of Philadelphia Memorial as of the dates of the contributions. Both parties recognize that a substantial part of the difference in their respective values is attributable to two factors, i.e., (1) whether the sites are to be valued on a bulk basis *270 or individually, and (2) the appropriate market for determining value. We considered both of these questions in Anselmo v. Commissioner,80 T.C. 872 (1983), affd. 757 F.2d 1208 (11th Cir. 1985), and concluded that each individual stone involved therein was a separate unit of property for valuation purposes. 80 T.C. at 884. We also concluded that the value of each unit is the price that would be paid by the "ultimate consumer," a person buying for consumption rather than for resale. 80 T.C. at 882. Using the same reasoning in the present case, since the grave sites could be sold on other than a bulk basis, the fair market value of the donated grave sites would be the sum of the values of the individual grave sites and the value of each site would be the price at which it would change hands between a seller and the ultimate consumer, an individual buying his own or a family grave site. Therefore, if Philadelphia Memorial had been the only seller of the grave sites, and if a consumer or consumers had paid Philadelphia Memorial $300.00 for one or more of the sites, then an inference could be drawn that the fair market value *271 was $300.00 per site, as petitioners claim. However, on this record we are unable to find that either of these assumptions is correct. First, Philadelphia Memorial was not the only source of grave sites as clearly appears from the several hundred grave sites held by petitioners and other individuals and institutions described in this case. Furthermore, there were obviously other owners who were not mentioned in these proceedings. Secondly, although Mr. Klein of Philadelphia Memorial testified that the selling price of the sites was $300.00, the record contains no evidence that Philadelphia Memorial actually sold any lots at that price. Furthermore, if Philadelphia Memorial had considered the fair value of the sites to be $300.00, it is difficult to understand how it offered Seamen's only $1.00 per site a few years earlier. Even if Philadelphia Memorial actually sold sites for $300.00, we seriously doubt that a buyer with knowledge of the relevant facts would have paid such a price. Instead, such a buyer would have attempted to deal with Landsberg, who originally acquired sites for $4.73, sold some of them for $60.00, and then reacquired some of the sites in exchange for other *272 sites worth only $12.50. The buyer also could have looked to St. John's or other owners. See Anselmo v. Commissioner, 757 F.2d at 1213. Other than Klein's testimony, the record contains no evidence having any bearing on the price at which the sites would have changed hands between a seller and an ultimate consumer. In the absence of such evidence, we are satisfied that the most reliable and probative evidence of value is the purchase price paid by petitioners. See Chiu v. Commissioner,84 T.C. 722, 734 (1985); see also Estate of Kaplin v. Commissioner,748 F.2d 1109, 1111 (6th Cir. 1984), revg. a Memorandum Opinion of this Court. Consequently, from the record as a whole, we conclude that the purchase price of $60.00 per site paid by petitioners represents the fair market value of the individual grave sites on the dates of the contributions. [4]
Addition to Tax Under *273 Section 6653(a)
Respondent also determined that petitioners are liable for the addition to tax for negligence under section 6653(a). Petitioners contend that they are not liable for the addition because they relied on the advice of their accountant. In reply, respondent argues that reliance on the advice of an accountant does not always preclude the addition to tax. See, e.g., Enoch v. Commissioner,57 T.C. 781 (1972); Stone v. Commissioner,22 T.C. 893 (1954). Moreover, respondent continues, such reliance was not reasonable in this case since petitioners knew that they paid only $60.00 for each site on which they claimed a deduction of $300.00. Recognizing that questions of value are often difficult, especially where the property is bought or donated in bulk and the relevant market is unclear (See Anselmo v. Commissioner,supra.), and that petitioners have presented some proof in support of their argument that the fair market value was $300.00, we conclude that petitioners' conduct in this case did not rise to the level of negligence. Therefore, they are not liable for the addition to tax under section 6653(a). Decision will be *274 entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
2. The first sale to petitioners took place before Seamen's had actually transferred the sites to Landsberg.↩
3. The amount of the contribution is reduced by any ordinary income or short term capital gain that the taxpayer would have realized had he sold the property on the date of contribution.Section 170(e)(1).↩
4. Since we have found that the fair market value of the grave sites equaled petitioners' cost basis, petitioners would not have realized any gain upon a sale of the grave sites at fair market value. Consequently, section 170(e)(1) is not applicable.↩