DALE B. DUBIN and SUSAN J. DUBIN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dubin v. Commissioner
Docket No. 23140-83.
United States Tax Court
T.C. Memo 1986-433; 1986 Tax Ct. Memo LEXIS 181; 52 T.C.M. (CCH) 456; T.C.M. (RIA) 86433; September 11, 1986. Ralph A. Muoio,Scott D. Michel,Mark T. Tate, and E. Jackson Boggs, for the petitioners. James F. Kearney and Sara M. Coe, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated June 30, 1983, respondent determined deficiencies in petitioners' Federal income tax liabilities, as follows: Years
Deficiencies
1978
$97,324
1979
146,069
1980
142.170
The primary issue for decision is the fair market value of a jade desk set and certain gemstones and minerals donated by petitioners to the Smithsonian Institution. By amendment to his answer, respondent also asserts the increased rate of interest on substantial underpayments of tax attributable to tax motivated transactions pursuant to section 6621(d). *184 [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners were husband and wife during the years in issue but are now divorced. At the time the petition herein was filed, petitioners resided in the State of Florida. Hereinafter, references to petitioner will be to Dale B. Dubin. Petitioner is a plastic and reconstructive surgeon. He also has been collecting gems and minerals as a hobby for over 25 years. Petitioner has built an extensive gem and mineral collection, and he displays many of his specimens in his medical office. In 1972, petitioner purchased for $750 a large colorless topaz crystal weighing approximately 19 pounds (30,225 carats), which he placed in his personal collection. In its natural form, topaz generally is a transparent, colorless gem. In 1974, however, petitioner leaned of a new, experimental treatment process involving the combined use of radiation and heat which could produce an artificial blue color in certain topaz crystals. The appearance of a colorless topaz crystal that is successfully treated *185 by this process is similar to natural blue topaz and therefore such a topaz crystal is more valuable than a colorless topaz crystal. In 1975, petitioner's topaz crystal was partially treated with radiation, which caused it to turn a deep brown color and which also caused some undesirable "cloudiness" in the crystal. Petitioner was informed that the crystal might turn blue if treated further with heat, but he did not subject the crystal to any further treatment. During the early months of 1977, Paul E. DeSautels ("DeSautels"), at that time curator of the Minerals Department at the Smithsonian Institution ("Smithsonian"), visited petitioner in his home and viewed portions of his gem and mineral collection. DeSautels was soliciting donations of gemstone and mineral specimens to the Smithsonian to increase its gemstone and mineral collections. DeSautels expressed an interest in acquiring from petitioner his large topaz crystal and certain of his other gemstone and mineral specimens. DeSautels also informed petitioner of an 18-piece Russian jade desk set which was then on loan to the Smithsonian by its owner, a gemstone dealer named Richard Swaebe ("Swaebe"). Swaebe had purchased *186 the jade desk set in 1975 for about $40,000. DeSautels suggested that petitioner purchase the desk set from Swaebe and simultaneously donate it to the Smithsonian. Acting on DeSautels' suggestion, on March 2, 1977, petitioner purchased the jade desk set for $55,000. In conjunction with the purchase of the jade desk set from Swaebe, petitioner obtained an appraisal of the desk set reflecting a value therefor of $225,000. From March 2, 1977, until December 23, 1977, the desk set remained at the Smithsonian, and on December 23, 1977, petitioner donated the jade desk set to the Smithsonian. Also on December 23, 1977, petitioner donated to the Smithsonian eight gem and mineral specimens from his collection. Petitioner obtained appraisals of each of the eight specimens prior to the donation thereof. The appraisals reflected the dimensions or weight and value of the specimens, as follows: Name of
Appraised
Specimen
Size
Value
Augelite
5 X 3.5 X 3 inches
$2,000
Lazulite
7 X 4.5 X 2 inches
7,500
Opal
550 carats
12,375
Peridot
103.23 carats
20,646
Tourmaline
5 X 5 X 5 inches
26,593
Wardite
6.5 X 3 inches
3,500
Wulfenite
16.5 X 8 X 4 inches
[2] 33,000
Rhodochrosite
3.25 X 3 inches
18,000
TOTAL
$123,614
*187 In July of 1978, petitioner placed the large topaz crystal on loan to the Smithsonian. The Smithsonian did not place the crystal on public display. In October of 1978, petitioner obtained an appraisal of the topaz crystal which reflected a value therefor of $846,300. That value was based on the appraiser's opinion that the crystal successfully could be treated with the new radiation process and would yield approximately 10,578 carats (35 percent of its total weight) of irradiated blue topaz gemstones, which were selling in retail jewelry stores in October of 1978 for approximately $80 per carat. In November of 1978, petitioner obtained a second appraisal of the topaz crystal which reflected a value therefor of $800,000. That value was based on the appraiser's opinion that the crystal, if successfully treated, would yield 10,075 carats (approximately 33 percent of its total weight) of irradiated blue topaz gemstones which were then selling in retail jewelry stores for approximately $80 per carat. The $800,000 value reflected the appraiser's subtraction of $6,000 for cutting costs. On *188 December 3, 1978, petitioner donated to the Smithsonian a 10-percent undivided interest in the topaz crystal. In December of 1979, petitioner obtained two appraisals of the topaz crystal, each of which reflected that as of December of 1979, the retail price of irradiated blue topaz gemstones had increased from $80 to $100 per carat. Accordingly, the two appraisals obtained in 1979 reflected a fair market value for the topaz crystal of $1,057,800 and $1,000,000, respectively. On December 31, 1979, petitioner donated to the Smithsonian an additional 24.3-percent undivided interest in his topaz crystal. In December of 1980, petitioner again obtained an appraisal of the topaz crystal, which reflected that the retail price of irradiated blue topaz gemstones had increased from $100 to $120 per carat. Accordingly, the appraisal reflected a fair market value for the crystal of $1,269,360. On December 31, 1980, petitioner donated to the Smithsonian an additional 23.6-percent undivided interest in his topaz crystal. At the time of trial, petitioner continued to hold approximately a 40-percent undivided interest in the topaz crystal. On their 1977 amended Federal income tax return, petitioners *189 claimed a charitable contribution deduction in the total amount of $348,614 for the jade desk set ($225,000) and the eight gem and mineral specimens ($123,614) donated to the Smithsonian in that year. Because of the 30-percent limitation of section 170(b)(1)(C), petitioners' charitable contribution deduction was limited to $196,400, and petitioners carried over to their 1978 Federal income tax return a charitable contribution deduction in the amount of $152,214. Petitioners' 1977 Federal income tax return is not at issue herein, and the proper value of the jade desk set and the eight gem and mineral specimens donated by petitioner in 1977 is in dispute only by virtue of the carryover of petitioners' claimed 1977 charitable contribution deduction to their 1978 return. Petitioners reported on their Federal income tax returns for 1978, 1979, and 1980, a fair market value for the topaz crystal of $846,300, $1,057,800, and $1,269,360, respectively, and claimed a charitable contribution with respect to the percentage interests therein donated to the Smithsonian in each of the years, as follows: Percentage Interest
Amount of Claimed
Year
in Topaz Donated
Charitable Deduction
1978
10.0%
$84,630
1979
24.3%
257,045
1980
23.6%
299,569
*190 In his notice of deficiency, respondent disallowed the entire charitable contribution carryover from 1977 (attributable to the jade desk set and the eight specimens donated in 1977). Respondent also determined that the fair market value of the topaz crystal in each of the years in issue was $750 and allowed petitioners' deductions for the percentage interests therein donated to the Smithsonian in the respective amounts of $75, $182, and $177 for 1978, 1979, and 1980. OPINION The primary issue for decision relates to the amount of the charitable contribution deductions to which petitioners are entitled under section 170 for the contribution of the jade desk set, the eight gem and mineral specimens, and the topaz crystal to the Smithsonian.[3] With certain limitations not here applicable, if a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property as of the date the property is contributed, reduced as provided in section 170(e)(1). Sec. 1.170A-1(c)(1), Income Tax Regs. The generally accepted definition of fair market value as set forth in respondent's regulations is "the price at which the property *191 would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. The proper market for purposes of determining the value of donated property is a question of fact to be resolved by considering all the relevant evidence in the record. Anselmo v. Commissioner,757 F.2d 1208, 1213 (10th Cir. 1985), affg. 80 T.C. 872 (1983); Chiu v. Commissioner,84 T.C. 722 (1985). We first turn to the value of the 18-piece jade desk set donated to the Smithsonian in 1977. Petitioner purchased the desk set on March 3, 1977, for $55,000. Petitioner argues that the value of the desk set on December 23, 1977, the date of the contribution, was $225,000. Petitioner relies on an appraisal of the desk set made in conjunction with his purchase thereof which reflected a value for the desk set of $225,000. The author of that appraisal did not testify at trial. Petitioner *192 asserts that the desk set likely was crafted by Carl Faberge ("Faberge"), a famous Russian artisan. In support thereof, petitioner's expert witness at trial emphasized the overall quality of the desk set and pointed to one particular item from the set, a stamp moistener carved in the shape of a tomato, which was, in his opinion, virtually identical to an item from a jade desk set known to be crafted by Faberge. Although Faberge's work generally shows his signature markings, the jade items in petitioner's desk set show no signature markings. Respondent argues that the value of the desk set in 1977 was no more than $55,000. Respondent presented testimony from an expert on the work of Faberge who stated that the desk set was not made by Faberge but was merely a poor copy of his work. Respondent also emphasizes that petitioner offered no explanation as to why Swaebe would sell to petitioner a jade desk set for $55,000 which Swaebe knew contemporaneously had been appraised at a value of $225,000. In that regard, petitioner testified only that he was "fortunate." We previously have held that reliable evidence of the fair market value of a contributed item is the cost of the item *193 to the taxpayers. Chiu v. Commissioner,supra at 734-735; see also Estate of Kaplin v. Commissioner,748 F.2d 1109, 1111 (6th Cir. 1984), revg. a Memorandum Opinion of this Court. In the instant case, there is no credible evidence that in 1977 the value of the jade desk set exceeded $55,000, the price paid by petitioner therefor. Petitioner's assertion that the fair market value of the desk set was $225,000 is based primarily on the contention that the desk set was crafted by Faberge. Obviously, Swaebe held little confidence in the opinion of petitioner's appraiser, and neither do we. We accept the testimony of respondent's expert witness, a dealer of Faberge art work, who testified that the desk set clearly was not the work of Faberge. His opinion was based on a variety of reasons which included the type of jade used in the desk set, the design of the items, and particularly the craftmanship of the desk set. Having determined that the value of the jade desk set in 1977 did not exceed $55,000, the issue herein regarding the value of the eight mineral specimens donated in 1977 is moot. As a result of the decrease in the amount deducted *194 in 1977 to reflect the value of the jade desk set, petitioners' 1977 contributions do not exceed the contribution ceiling provided by the 30-percent limitation of section 170(b)(1)(c). Petitioners, therefore, are not entitled to any carryover to 1978 of charitable contributions made in 1977. [4]
With regard to the value of the topaz crystal donated to the Smithsonian in 1978, petitioner argues that because the topaz crystal could have been converted into a blue topaz crystal through a process of radiation and heat treatment and cut into finished gemstones which then could have been sold in retail jewelry stores, that potential use was the highest and best use of the topaz crystal and the crystal should be valued on that basis. The price for which irradiated blue topaz gemstones sold in jewelry stores at retail was $80 per carat in 1977, $100 per carat in 1978, and $120 per carat in 1980. Thus, based on the crystal's total asserted useable *195 carat weight (after cutting) of approximately 10,578 carats, petitioner alleges that the fair market value of the topaz crystal was $846,300 in 1978, $1,057,800 in 1979, and $1,269,360 in 1980. Respondent argues that the value of the topaz crystal did not exceed $750 in 1978, 1979, or 1980. First, respondent argues that petitioner's valuation method for the topaz crystal is erroneous because the crystal would not have been marketable to customers of retail jewelry stores in the form in which it was donated to the Smithsonian (i.e., as a 19-pound rough topaz crystal with a brown coloring). Respondent contends that petitioner could have sold the topaz crystal only to gem cutters or collectors, and that we must value the crystal according to the price it would bring in those markets, rather than in retail jewelry stores. Further, respondent emphasizes that the topaz crystal donated by petitioner herein was brown, not blue. Relying on the testimony of his expert witness on irradiation, respondent argues that at the time of the donation, the prospect of successfully converting the color of the topaz crystal through further treatments of radiation and heat was too remote and speculative *196 to have influenced the value thereof. Respondent's expert witness appraised the value of the crystal as follows: VALUE AS OF: Markets
Dec. 3, 1978
Dec. 31, 1979
Dec. 31, 1980
Dealer/Cutter
$453.75
$589.88
$766.84
Collectors
2,831.25
3,419.64
4,190.62
After a thorough examination of all the facts and circumstances involved herein, we agree with respondent that the value of the topaz crystal in 1978, 1979, and 1980 did not exceed $750. As we previously stated, the choice of market in which to value contributed property is a question of fact. Anselmo v. Commissioner,supra. Petitioner's experts concede that the topaz crystal would not have been sold in retail jewelry stores in the form in which it was donated, but most commonly would have been sold to gem gutters or collectors. Nevertheless, petitioner argues that we must value the crystal as if it already had been converted to a blue topaz crystal, cut into small gemstones which then would be available for sale in retail jewelry stores. In 1977, however, the radiation and heat treatment was still in the experimental stage. Only one individual, petitioner's expert, *197 actually was experimenting with the process, and he testified that during the year before us he was not irradiating gemstone specimens owned by other individuals, such as petitioner. We therefore are not convinced that the slight possibility of enhancing the color of petitioner's topaz crystal was sufficient to cause the value of the crystal to increase from $750 to over $1.2 million between 1972 and 1980, as petitioner's experts suggest. We are not bound by the opinion of an expert witness, and we may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Helvering v. National Grocery Co.,304 U.S. 282 (1938); Silverman v. Commissioner,538 F.2d 927, 933 (2d Cir. 1976), affg. a Memorandum Opinion of this Court. That is our job and our duty. Because petitioner's experts appraised the topaz crystal with regard only to its value as irradiated blue topaz gemstones sold at retail, those opinions are not a reliable basis from which to determine the value of the topaz crystal as it existed in 1977, 1978, and 1979 (and as it still exists today). Respondent's value for the topaz crystal of $750 is close to the values reported *198 by his expert witness and is identical to the acquisition price of the crystal in 1972. We find that the value of the topaz crystal was $750 on each of the relevant valuation dates. By amendment to his answer, respondent raised an additional issue concerning the application of the increased rate of interest on substantial underpayments attributable to tax motivated transactions under section 6621(d). [5] The increased interest rate applicable under section 6621(d) is 120 percent of the interest rate otherwise applicable to income tax underpayments under section 6621(b). Where applicable, the increased interest rate provided in section 6621(d) applies with respect to interest accruing after December 31, 1984. Deficit Reduction Act of 1984, sec. 144(c), Pub. L. No. 98-369, 98 Stat. 682; The Stanley Works and Subsidiaries v. Commissioner, 87 T.C.     (August 12, 1986). *199 Transactions considered to be "tax motivated transactions" under section 6621(d) are set forth in section 6621(d)(3) and include a "valuation overstatement" as defined in section 6659(c). Section 6659(c) provides that a valuation overstatement is present if the value of any property, or the adjusted basis of any property, claimed on a return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis, as the case may be. In the instant case, petitioners valued the topaz crystal at $846,300, $1,057,800, and $1,269,360 on their Federal income tax returns for 1978 through 1980. In light of our determination that the value of the topaz crystal did not exceed $750 during the years in issue, a valuation overstatement was made on petitioners' returns, and petitioners are liable under section 6621(d) for the increased rate of interest on substantial underpayments of tax attributable thereto. We so hold. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. The parties herein agree that the value of the Wulfenite stone in 1977 was $33,000.↩
3. Sec. 170(a)(1) allows a deduction for a charitable contribution to an organization described in sec. 170(c). The Smithsonian so qualifies.↩
4. Contributions made by petitioners in 1977 as redetermined herein are as follows: ↩
Jade Desk Set
$ 55,000
Eight Specimens
123,614
Total Contribution
$178,614
30-percent limitation
196,400
Amount of carryover
5. (d) Interest on Substantial Underpayments Attributable to Tax Motivated Transactions. -- (1) In general. -- In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the adjusted rate established under subsection (b). (2) Substantial underpayment attributable to tax motivated transactions. -- For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000. (3) Tax motivated transactions. -- (A) In General. -- For purposes of this subsection, the term "tax motivated transaction" means -- (i) any valuation overstatement (within the meaning of section 6659(c)), (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8), (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period. * * *↩